## TRANSPORTATION OF DEAD ANIMALS THROUGH A MUNICIPALITY.

[Common Pleas Court of Cuyahoga County.]

J. L. STADLER, DOING BUSINESS AS J. L. & H. STADLER, v. THE CITY OF CLEVELAND.

Decided, December 22, 1906.

*Monopoly—Authority of Municipality to Grant—Police Powers—Regulations for the Protection of the Public Health—Presumption—Injunction—Section* 1536-100 (3) *and Section* 1536-100 (25).

1. In an action to enjoin a municipality from interfering with property rights, the presumption is that the defendant officials are acting within the scope of their authority.

2. A municipality has the power to grant a monopoly for transporting and utilizing dead animals which have not been slaughtered for food; and a demurrer to a petition for an injunction against interference with rights under such a grant will not lie where the petition alleges that carcasses which have become decayed, putrid or offensive are not transported or handled, and that such transportation and handling has at all times complied with the rules· and regulations of the board of health.

BEACOM, J.

Plaintiff has for many years owned and operated a rendering and fertilizer plant and business within the city of Cleveland and now owns and operates the same. The petition says that—

"As a necessary incident to said business plaintiff buys the carcasses of dead animals from the owners thereof in and about the city of Cleveland, and removes the carcasses of the dead animals to his plant; that plaintiff is, and at all times mentioned in the petition has been, well equipped for handling the carcasses of dead animals in a sanitary and proper manner, and he does not buy, transport or handle any animals the carcasses of which have become decayed, putrid or offensive; and that in the transportation and handling of said carcasses he has at all times complied with the rules and regulations of the board of health of said city."

The defendants are the city of Cleveland, a municipal corporation, its superintendent of police, the members of its board of public service, and its health officer.

The plaintiff complains of the defendants that they have been and now are interfering with him in the conduct of his business by refusing to permit him to take possession of and to transport to his premises dead animals purchased by him, and that they have at various times during the past year unlawfully taken such dead animals out of his possession, they being his own private property, and that they are continuing so to deprive him of possession of these carcasses of which he is the owner, and that they threaten to continue this course of conduct toward him. Plaintiff prays the court to enjoin the defendants from these acts. Defendants demur. The demurrer admits that all the allegations of the petition are true.

The powers of the defendant municipality, with which we are at present concerned, are found in Section 1536-100 (3), which grants the power "to prevent injury from anything dangerous, offensive or unwholesome," and in Section 1536-100 (25), which grants power "to provide for collection and disposition of sewage, garbage, ashes, animal and vegetable refuse, dead animals and animal offal, and to establish, maintain and regulate plants for the disposal thereof." Complaint having been made by petitioner against the acts of the defendant munici-

pality and its administrative officers, and a demurrer having been filed thereto, the question presented to the court for its determination is whether or not the municipality through its legislative body, the council, may, under the authority given in the statutory provisions just cited, grant to the defendants authority to do the things complained of. The presumption is that the defendant officers are acting within the scope of their powers; that is, that the council has authorized the doing of that which they are doing. Such is the presumption in their favor that is made on a demurrer, and that brings us to a consideration of the question whether or not the municipality has power under any circumstances to authorize the doing of the things herein complained of.

As stated in argument by counsel for both plaintiff and defendants, the court is asked herein to determine whether or not the governmental power known as the police power, which includes the power to protect public health and comfort, can be exercised so as to take from the owner of a dead animal, which has not been slaughtered for food, the possession of that animal.

The subject-matter of this case is not itself a large one, but this is the kind of question that has been involved in many of the most celebrated cases that have ever been considered by the courts. It involves the consideration of the power of society over private property for the purpose of protecting the peace and morals and health of the community. A dead animal is the subject of ownership. It is property. The petitioner has carefully averred that the animals which he owns and transports and uses have not by reason of decay become a nuisance. We then are called upon to determine whether or not the municipality could provide for the taking of a dead animal immediately upon death before there is any decay or when decay is merely incipient and depriving the owner of possession thereof.

The city may exercise the powers already referred to as given to it by the Legislature of the state, and in exercising these powers it may use every means "which are plainly adapted to an end." That was the language of Marshall, J., in *McCulloch v. Maryland*, 4 Wheaton, 316. Substantially the same language is used in 199 U. S., 306, *California Reduction Co.* v. *Sanitary*

*Reduction Works,* in which it was declared that "where a regulation by competent public authority for the protection of the public health has a real substantial relation to that object, the courts will not strike it down." The mere declaration by a legislative body that a certain thing shall be done to attain a certain end is not conclusive that it is adapted to that end. The courts always have power to determine whether or not the method sought to be used by the legislative body is "plainly adapted to the end."

The end sought to be attained by any legislation authorizing the doing of the things complained of in this petition would be the protection of public health. If the municipal council should determine that the granting a monopoly in the taking possession of and hauling away and making use of dead animals was reasonably necessary in order to prevent their becoming a public nuisance, and if a court should be of the opinion that such a provision was reasonably adapted to the end sought to be attained, to-wit, the protection of the public health, then such exercise of the police power would be a valid exercise.

In the celebrated *Slaughter House Cases,* 83 U. S., 36, the Legislature of Louisiana had granted a monopoly to a company to do all the slaughtering of animals within a certain territory, including New Orleans, and provided that animals should not be slaughtered in any other place than in those provided by the corporation to whom the monopoly was given, and the Supreme Court of the United States declared that this "was a police regulation for the health and comfort of the people within the power of the state Legislature," and further said that "The Parliament of Great Britain and the state Legislatures of this country have always exercised the power of granting exclusive rights, when they were necessary and proper to effectuate a purpose which had in view the public good, and the power here exercised is of that class."

In *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S., 306, *supra,* the facts were in substance these: The city council of San Francisco passed an ordinance granting to certain persons "the sole and exclusive right and privilege for a term of fifty years to cremate and destroy within the city and county dead animals," etc. The court declared that the city

did have "full authority to make and enforce such reasonable sanitary regulations as have for their object the preservation of the public health. An ordinance based upon reasonable grounds for the cremation of refuse at a designated place as a means for the protection of the public health is not a taking of private property for public use without compensation. The exclusive privilege granted to a company to dispose of the garbage in the city and county of San Francisco, held not void as taking the property of householders for public use without compensation. Municipal bodies may exercise the power to provide such regulations as may be reasonably necessary and appropriate for the protection of the public health. Equally well settled is the principle that, if a regulation enacted by competent public authority avowedly for the protection of the public health has a real substantial relation to the object, the courts will not strike it down."

As to the reasonableness of the granting of a monopoly as a means of attaining the end sought, to-wit, the destruction of garbage and refuse and dead animals, the court says: "Nor can we say that the mode adopted for the suppression of the evils in question was arbitrary or did not have a real, substantial relation to the protection of the public health." The court adjudged that the ordinance was not invalid.

I am therefore of opinion that the defendant municipality does have power to grant a monopoly for the taking and transporting and utilizing dead animals that have not been slaughtered for food. What provision the city has made therefor I do not know, and it is not necessary to know for the purposes of this case, argued, as it has been, upon demurrer. The court is called upon to determine whether or not the powers which plaintiff complains the defendants are seeking to exercise could under any conditions be exercised, and this court being of opinion that they might be exercised in case the municipal council has passed or should pass appropriate legislation, the demurrer is sustained.

*E. J. Hart,* and *W. H. Boyd,* for plaintiff.

*N. D. Baker, Wilcox, Payer, Wilkins & Carey,* City Solicitors, for defendants.